UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LANCE WALTERS,<br><br>Plaintiff,<br><br>v.<br><br>WEXFORD OF INDIANA, LLC,<br>*et al.*,<br><br>Defendants. | CAUSE NO. 3:20-CV-230-JD-MGG |

OPINION AND ORDER

Lance Walters, a prisoner without a lawyer, filed a complaint against eleven defendants along with a motion for preliminary injunctive relief. A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted).

On February 7, 2020, Walters was transferred from the Putnamville Correctional Facility to the Westville Correctional Facility. He alleges that, upon his relocation, his "cane, knee supports, shower chair, pull-ups, [and] medications" were taken from him. ECF 2 at 5. During intake, he met with medical staff at Westville and informed them of his lupus diagnosis, which limited his mobility and prevented him from climbing stairs without pain. He was given a bottom bunk pass, but he was forced to walk up two flights of stairs to get to it. Walters sent numerous healthcare requests to the medical

staff regarding the situation, but he was informed that there were no doctor's orders for his cane or knee support even though Walters had pointed out that such an order from Doctor Pablo Perez of Wexford was available in his electronic medical record.

Later, although it is unclear exactly when, Walters met with RN Rogers (Nurse Rogers) in person and told her he needed his cane and knee supports because he was in severe pain and could barely walk. He also requested his pull-ups because he had urinated on himself and was experiencing a rash and swelling. Nurse Rogers made fun of Walters's requests, refused to give him his medical devices, and did not do anything to treat the rash. On March 2, 2020, Walters met with RN Cody (Nurse Cody) who also failed to provide him with his medical devices and refused to give him medication for his rash. Instead, he was instructed that he would be issued a pass for pick up in the medication room, but he never received one.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of

being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Walters describes his lupus as causing joint pain, muscle weakness, fatigue, limited mobility, and organ failure. It is unclear whether his incontinence and rash issues are caused by the lupus or some other medical issue. Either way, giving Walters the benefit of the inferences to which he is entitled at this stage, it is plausible that his medical condition is serious and that his cane, knee supports, shower chair, pull-ups, and medication could constitute serious medical needs related to that condition.[1] *See McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016) ("chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions unless adequately treated" can be objectively serious); *Franklin v. McCaughtry*, 110 Fed. Appx. 715, 721 (7th Cir. 2004) (in certain cases, even the "need for prescription glasses could conceivably constitute a serious medical need"); *West v. Millen*, 79 Fed. Appx. 190, 193 (7th Cir. 2003) ("pain due to the withholding of medication can constitute a serious medical need").

Moreover, it is plausible that Nurse Rogers and Nurse Cody were deliberately indifferent to Walters's serious medical needs. Walters alleges that they were aware of his condition and diagnosis—including the medical devices he needed and the pain he was suffering absent them—but they refused to assist him with obtaining the devices,

---

[1] Indeed, Walters alleges that the cane and knee supports were prescribed to him by a physician at another facility and that all of the devices are medically necessary.

treating his issues including his rash, or addressing his pain. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (collecting cases and noting that a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference" and that a "refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain"). Although further fact-finding may reveal that the nurses had a valid reason for their actions, based on these allegations, Walters has stated plausible Eighth Amendment claims against Nurse Rogers and Nurse Cody for monetary damages.[2]

Walters also alleges that he sent several health care requests to Health Care Administrator Livers and Medical Director Rebac—specifically advising them of his need for his cane and knee supports and pointing them to the electronic medical record as proof that they were necessary and had been previously prescribed by a physician—but they ignored his requests. Again, although it is possible that there was a reason for

---

[2] In addition to being deliberately indifferent to his medical needs, Walters alleges that Nurse Rogers retaliated against him because he had his mother call the prison about his medical problems. Specifically, Walters alleges that Nurse Rogers stated loudly, "Are you the one who had your mommy call here?" and continued making fun of him in retaliation for the phone call. ECF 2 at 6. Even assuming, *arguendo*, that the phone call constituted an activity protected by the First Amendment and that it was a motivating factor for the retaliation, it cannot be plausibly inferred that Nurse Rogers's mockery would "deter a person of ordinary firmness" from exercising his rights. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . ..."). Therefore, he has not stated a claim against Nurse Rogers for retaliation.

4

denying Walters these medical devices, at this stage he has stated plausible Eighth Amendment claims against Health Care Administrator Livers and Medical Director Rebac for monetary damages. *See Franklin,* 110 Fed. Appx. at 721.

However, the same cannot be said for the non-medical defendants, including the Warden, the Grievance Specialist, two Law Library Supervisors, the EC Complex Director, and the Mail Room Supervisor. There is no general respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). This is especially true in the context of differentiating between medical and non-medical defendants:

> [I]f a prisoner is under the care of medical experts ... a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Arnett*, 658 F.3d at 755 (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004)).

Here, Walters alleges that he "wrote requests" to these defendants—including the Warden, the Grievance Specialist, two Law Library Supervisors, and the EC Complex Director—but they did not remedy his complaints. ECF 2 at 6. He later states that he "contacted" them but they all responded by denying him "access to the law library, access to the courts, and e-filing service, withheld my mail and have hindered

5

my ability to litigate my case or remedy my complaints regarding my health care." *Id*. at 8. While it is true that non-medical defendants cannot simply ignore the plight of an inmate, a plaintiff must allege that the communication(s) sent to prison officials were sufficient in their "content and manner of transmission" to give those officials "notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755 (internal quotation marks and citation omitted). This is because "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Id*. (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996)). Walters's vague allegations that he contacted the non-medical defendants but they ignored his requests are "too meager" to state a claim. *See id*. at 756; *see also Burks*, 555 at 595 ("[Inmate's] contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's* rule that public employees are responsible for their own misdeeds but not for anyone else's.").

Walters also contends that John Harvil, the Grievance Specialist, mishandled his grievances and "should have looked in the Offender Information system" in order to discover his special medical needs upon transfer to Westville. ECF 2 at 7. He describes multiple missteps by Harvil along the way that allegedly hindered his ability to properly grieve the situation. However, an allegation that Harvil failed to adequately process his grievance requests does not state a claim. *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015); *see also Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure).

Walters attempts to bring a claim against Wexford of Indiana. Wexford is a private company that provides medical care within the prison. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But, a corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id*. Here, Walters alleges that Wexford has "treatment protocols" in place but that the medical staff deviated from them and went "against their own policy and procedures." ECF 2 at 8–9. Because Walters alleges the medical staff are not following protocol—as opposed to an allegation that he is being denied treatment based upon a policy or custom itself—he has not stated a claim against Wexford.

Walters alleges that he is being denied access to the courts, the law library, the e-filing system, and his legal mail by all of the non-medical defendants. Prisoners are entitled to meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977). "The right of access to the courts is the right of an individual, whether free or incarcerated, to obtain access to the courts without undue interference." *Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004). This right "is protected by the First Amendment right to petition and the Fourteenth Amendment right to substantive due process." *Id*. Denial of access to the courts must be intentional; "simple negligence will not support a claim

that an official has denied an individual of access to the courts." *Id.* at 291 n.11 (citing *Kincaid v. Vail*, 969 F.2d 594, 602 (7th Cir. 1992)).

To establish a violation of the right to access the courts, an inmate must show that unjustified acts or conditions (by defendants acting under color of law) hindered the inmate's efforts to pursue a non-frivolous legal claim. *Nance v. Vieregge*, 147 F.3d 589, 591 (7th Cir. 1998). He must also show that actual injury (or harm) resulted. *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (holding that *Bounds* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts); *see also* Pattern Civil Jury Instructions of the Seventh Circuit, 8.02 (rev. 2017). In other words, "the mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access *the courts*, and only if the defendants' conduct prejudices a potentially meritorious [legal claim] has this right been infringed." *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) (emphasis in original). "Thus, when a plaintiff alleges a denial of the right to access-to-courts, he must usually plead specific prejudice to state a claim, such as by alleging that he missed court deadlines, failed to make timely filings, or that legitimate claims were dismissed because of the denial of reasonable access to legal resources." *Ortloff v. United States*, 335 F.3d 652, 656 (7th Cir. 2003) (overruled on other grounds).

Walters's complaint contains many broad statements about his rights being violated but few facts regarding this claim. In the complaint, he does not identify any specific legal proceeding, describe his nature of his legal claim that has been harmed, or explain how that claim has been harmed. In general, he does not describe in detail how

each defendant was involved in violating these rights. He does allege that his privileged mail has been confiscated and returned to sender, but he does not describe the mail allegedly at issue.[3] *See Kaufman v. McCaughtry*, 419 F.3d 678, 685–86 (7th Cir. 2005) (defining legal mail narrowly as letters "marked with an attorney's name and a warning that the letter is legal mail"). A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotation marks and brackets omitted). As presented, Walters has not stated a plausible claim on these grounds.

Finally, in his complaint, Walters states that he is requesting injunctive relief as set forth in his separate motion for a temporary restraining order and preliminary injunctive relief. Construing the complaint liberally to include the relief requested in the motion (ECF 4), Walters asks that: (1) Wexford be ordered to send him to a specialist to treat his lupus; (2) that the defendants be enjoined from transferring him to a different facility; and (3) that a preliminary injunction be issued to ensure he receives treatment for his lupus and is given back his cane, knee supports, shower chair, and medications.

---

[3] Although he alleges that M. Moore, the Mail Room Supervisor, has indicated he can "only receive correspondence from Amazon Books or an Edward Hamilton" (ECF 2 at 7), he does not explain how this claim is related to the other claims in this proceeding. Moreover, he states that the "mail room staff admits there is a staff shortage" (ECF 2 at 7) leading to a delay in receipt of mail for all inmates, which suggests negligence rather than intentional conduct with regard to the mail. *See Snyder*, 380 F.3d at 291 n.11.

9

It is the warden who is "a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). As to the medical requests, Walters may proceed against Warden Galipeau in his official capacity to obtain an injunction for constitutionally adequate medical care and supplies related to his lupus. That said, the specific injunctive relief Walters requests—including receiving care from an outside specialist—may not be ordered even if it is ultimately determined that his current medical care is inadequate. While it is true that the Warden has both the authority and the responsibility to ensure Walters receives the medical care to which he is entitled under the Eighth Amendment, *Gonzalez*, 663 F.3d at 315, there may be various ways to do so that do not involve sending Walters to a specialist. Simply put, Walters cannot dictate how such medical care is provided. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore, injunctive relief—if granted—would be limited to requiring correctional officials to provide medical treatment and supplies for Walters's lupus to the extent required by the Constitution.

As to his request that the Warden be enjoined from transferring him to a different facility, Walters has provided no basis for proceeding on a claim for such

relief. In his complaint, Walters states that he was "transferred from the Indiana State Farm-Putnamville Correctional Facility to the Westville Correctional Facility, for retaliation of my complaints." ECF 2 at 5. Even assuming, *arguendo*, that prison officials at Putnamville transferred him in a retaliatory manner, Walters does not allege, nor is it reasonable to infer, that any of the named defendants in this case were involved in that decision. Neither does he allege any facts to support the inference that similar retaliation will occur at the behest of these defendants. Therefore, the claim for injunctive relief to "stop defendants from transferring me" will be dismissed.

With regard to the motion for preliminary injunctive relief, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

> To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. If a plaintiff makes such a showing, the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties. Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted.

*Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (citations and quotation marks omitted). Here, Walters has alleged that he is not receiving any medical care for his lupus, including medically prescribed devices and medication,

which is causing him pain, suffering, and rashes. The court will defer ruling on the motion until the Warden has filed a response and Walters has had an opportunity to reply.

For these reasons, the court:

(1) GRANTS Lance Walters leave to proceed against RN Rogers, Livers, and Rebac in their individual capacities for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care, including medically necessary devices and medication, related to his is previously diagnosed lupus condition beginning in February of 2020, in violation of the Eighth Amendment;

(2) GRANTS Lance Walters leave to proceed against RN Cody in her individual capacity for compensatory and punitive damages for failing to provide him with constitutionally adequate medical care, including medically necessary devices and medication, related to his is previously diagnosed lupus condition on March 2, 2020, in violation of the Eighth Amendment;

(3) GRANTS Lance Walters leave to proceed against Warden John Galipeau in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care, including medically necessary devices and medication, for his previously diagnosed lupus condition as required by the Eighth Amendment;

(4) DISMISSES Wexford of Indiana, LLC, John Harvil, M. Moore, John Hicks, Kelsey Torres, and P. Sonnenberg;

(5) DISMISSES all other claims;

(6) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) RN Rogers, RN Cody, Livers, and Rebac at Wexford of Indiana, LLC, with a copy of this order and the complaint (ECF 2), pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if they have such information;

(8) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Warden John Galipeau at the Indiana Department of Correction with a copy of this order, the complaint (ECF 2), and the motion for preliminary injunction (ECF 4), pursuant to 28 U.S.C. § 1915(d);

(9) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), RN Rogers, RN Cody, Livers, Rebac, and Warden John Galipeau to respond to the complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Lance Walters has been granted leave to proceed in this screening order; and

(10) ORDERS Warden John Galipeau to file and serve by **April 16, 2020**, a response to the motion for preliminary injunction (ECF 4) with a sworn statement (and supporting medical documentation as necessary) explaining how Lance Walters is receiving constitutionally adequate medical care, including medically necessary devices and medication, for his previously diagnosed lupus condition.

SO ORDERED on March 27, 2020

     /s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT