UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LANCE WALTERS,<br><br>        Plaintiff,<br><br>        v.<br><br>WEXFORD OF INDIANA, LLC,<br>*et al.*,<br><br>        Defendants. | CAUSE NO. 3:20-CV-230-JD-MGG |

OPINION AND ORDER

Lance Walters, a prisoner without a lawyer, filed an amended complaint against ten defendants.[1] A filing by an unrepresented party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On February 7, 2020, Walters was transferred from the Putnamville Correctional Facility to the Westville Correctional Facility. He alleges that he met with the medical staff upon intake and informed a nurse of his previous lupus diagnosis and the need for his "cane, knee supports, shower chair, [and] pull-ups." ECF 23 at 3. None of those

---

[1] Walters also previously filed a motion for preliminary injunctive relief. ECF 4.

devices were given to him at that time. He also informed the nurse of his need for a bottom bunk pass. He was issued the pass, but he is forced to walk up two flights of stairs to get to his bunk which causes him pain. Walters claims he sent numerous healthcare requests to Dorothy Livers, the Health Service Administrator (Administrator Livers), and Michelle Rebac, the Director of Medical Services (Director Rebac), regarding the situation, but he was informed that there were no doctor's orders for the devices even though Walters had pointed out that such an order from Doctor Pablo Perez was available in his electronic medical record.

Later, although it is unclear exactly when, Walters met with RN Rogers (Nurse Rogers) in person and told her he needed his cane, knee supports, and pull-ups because he was in severe pain and could barely walk. He showed her his swollen knees and a rash caused by having urinated on his clothing. Nurse Rogers made fun of Walters's requests and did not do anything to treat his issues. On March 2, 2020, Walters met with RN Cody (Nurse Cody) who also failed to provide him with his medical devices and refused to give him medication for his rash. Instead, he was instructed that he would be issued a pass to pick up the devices in the medication room, but he never received one.[2] Walters alleges that, due to the lack of treatment, his health has deteriorated and he is "very ill." ECF 23 at 9. He has sued all of the defendants for monetary damages and injunctive relief in the form of providing him with "constitutional medical care for Plaintiff to follow MD Pablo Perez's orders." *Id*. at 10.

---

[2] Walters indicates he has since received pull-ups, however, with the help of a Sergeant Brown.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal quotation marks, brackets, and citations omitted).

Walters describes his lupus as an autoimmune condition that attacks his joints and muscles and causes pain and mobility problems. Giving Walters the benefit of the inferences to which he is entitled at this stage, it is plausible that his medical condition is serious and that his cane, knee supports, shower chair, and pull-ups could constitute serious medical needs related to that condition.[3] *See McDonald v. Hardy*, 821 F.3d 882, 889 (7th Cir. 2016) ("chronic or degenerative conditions that cause harm that may escalate and have significant future repercussions unless adequately treated" can be

---

[3] Indeed, Walters alleges that the devices were prescribed to him by a physician at another facility and that they are medically necessary.

3

objectively serious); *Franklin v. McCaughtry*, 110 Fed. Appx. 715, 721 (7th Cir. 2004) (in certain cases, even the "need for prescription glasses could conceivably constitute a serious medical need"); *West v. Millen*, 79 Fed. Appx. 190, 193 (7th Cir. 2003) ("pain due to the withholding of medication can constitute a serious medical need").

Moreover, it is plausible that Nurse Rogers and Nurse Cody were deliberately indifferent to Walters's serious medical needs. Walters alleges that they were aware of his condition and diagnosis—including the medical devices he needed and the pain he was suffering absent them—but they refused to assist him with obtaining the devices, treating his issues including his rash, or addressing his pain. *See Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (collecting cases and noting that a "delay in treating non-life-threatening but painful conditions may constitute deliberate indifference" and that a "refusal to provide an inmate with prescribed medication or to follow the advice of a specialist can also state an Eighth Amendment claim if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain"). Although further fact-finding may reveal that the nurses had a valid reason for their actions, based on these allegations, Walters has stated plausible Eighth Amendment claims against Nurse Rogers and Nurse Cody for monetary damages.[4]

---

[4] In addition to being deliberately indifferent to his medical needs, Walters alleges that Nurse Rogers retaliated against him because he had his mother call the prison about his medical problems. Specifically, Walters alleges that Nurse Rogers stated loudly, "Are you the one who had your mommy call here?" and continued making fun of him in retaliation for the phone call. ECF 23 at 4. Even assuming, *arguendo*, that the phone call constituted an activity protected by the First Amendment and that it was a motivating factor for the retaliation, it cannot be plausibly inferred that Nurse Rogers's mockery would "deter a person of ordinary firmness" from exercising his rights. *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009); *see also Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no

Walters also alleges that he sent several health care requests to Administrator Livers and Director Rebac—specifically advising them of his need for his cane, knee supports, shower chair, and pull-ups and pointing them to the electronic medical record as proof that they were necessary and had been previously prescribed by a physician—but they ignored his requests. Again, although it is possible that there was a reason for denying Walters these medical devices, at this stage he has stated plausible Eighth Amendment claims against Administrator Livers and Director Rebac for monetary damages. *See Franklin,* 110 Fed. Appx. at 721.

Similarly, Walters alleges that he wrote to John Hicks, the ADA Coordinator, about his lupus condition and specifically explained to him that he had doctor's orders for his previously prescribed devices, that the medical staff was refusing to provide him with those devices, and that he wished to receive them so that his disability could be reasonably accommodated. According to Walters, Hicks ignored those requests. Accordingly, at this stage, he has stated a plausible Eighth Amendment claim against Hicks for monetary damages.[5]

However, the same cannot be said for the non-medical defendants, including Warden John Galipeau and John Harvil, the Grievance Specialist.[6] There is no general

---

matter how unlikely to deter a person of ordinary firmness from that exercise . . ..”). Therefore, he has not stated a claim against Nurse Rogers for retaliation on this basis.

[5] To the extent that Walters is attempting to raise an ADA failure to accommodate claim against Hicks, however, he may not do so. *See Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012) (“[E]mployees of the Department of Correction[] are not amenable to suit under the Rehabilitation Act or the ADA.”).

[6] Walters also mentions Paul Sonnenberg, but he is not named as a defendant in the amended complaint.

5

respondeat superior liability under 42 U.S.C. § 1983. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Id.* "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). This is especially true in the context of differentiating between medical and non-medical defendants:

> [I]f a prisoner is under the care of medical experts … a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Arnett*, 658 F.3d at 755 (citing *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir.2004)).

Here, Walters alleges that he "sent complaints in writing" to these defendants but they "failed to intervene or help me or provide me with a duty of care." ECF 23 at 4. He later states that they never met with him to investigate his claims, even though they knew of his "special needs" via the Offender Information System. *Id*. at 5–6. While it is true that non-medical defendants cannot simply ignore the plight of an inmate, a plaintiff must allege that the communication(s) sent to prison officials were sufficient in their "content and manner of transmission" to give those officials "notice to alert him or her to an excessive risk to inmate health or safety." *Arnett*, 658 F.3d at 755 (internal quotation marks and citation omitted). This is because "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Id*. (citing *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir.1996)). Walters's vague allegations that he sent the non-medical

6

defendants complaints but they ignored his requests are "too meager" to state a claim. *See id*. at 756; *see also Burks*, 555 at 595 ("[Inmate's] contention that any public employee who knows (or should know) about a wrong must do something to fix it is just an effort to evade, by indirection, *Monell's* rule that public employees are responsible for their own misdeeds but not for anyone else's.").

Additionally, Walters contends that Harvil mishandled his grievances. He describes multiple missteps by Harvil along the way that allegedly hindered his ability to properly grieve the situation. However, an allegation that Harvil failed to adequately process his grievance requests does not state a claim. *See Kervin v. Barnes*, 787 F.3d 833, 835 (7th Cir. 2015); *see also Grieveson v. Anderson*, 538 F.3d 763, 770 (7th Cir. 2008) (noting that there is not a Fourteenth Amendment substantive due-process right to an inmate grievance procedure).

Walters has also sued Wexford of Indiana, LLC. Wexford is a private company that provides medical care within the prison. A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But, a corporation "cannot be held liable under § 1983 on a respondeat superior theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather, corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id*. Here, Walters alleges that Wexford has "treatment protocols for treating chronic care patients" in place but that it is the custom or practice

7

of Wexford's employees to ignore the medical complaints from those patients instead of following protocol. ECF 23 at 6. Giving Walters the benefit of the inferences to which he is entitled, he has stated a plausible *Monell* claim against Wexford at this stage.

In a claim new to the amended complaint, Walters alleges that, on March 12, 2020, he presented to Urgent Care, where he met with Director Rebac, Administrator Livers, and Joshua Kuiper, a registered nurse (Nurse Kuiper). According to Walters, Nurse Kuiper took his blood pressure, which came back high because he, Administrator Livers, and Director Rebac were intimidating him during the examination. When he stated that he felt unsafe and wished to leave because it "seemed like an interrogation," Nurse Kuipers told him, "If you even act like your (sic) going to stand up out of your chair this is going to be a bad day for you, bud." ECF 23 at 7. Administrator Livers told him that if he did not sign "forms releasing liability," she would have his "mother's phone number restricted and my visits taken" away. *Id*. Director Rebac told him there was nothing wrong with him and "threatened" him. At that point, Kenneth Gann, the Deputy Warden, entered the room. Walters explained the situation to him. Administrator Livers interjected and stated, "All of us here are aware of your number of lawsuits, that is why you were transferred here and your (sic) not going to manipulate us." *Id*. at 8. When Walters reiterated that he didn't want to discuss the pending litigation, Deputy Warden Gann stated, "You are done here. You can get a lawyer, I can get a lawyer, and they will get a lawyer, and they can all have coffee together." *Id*.

8

"To prevail on his First Amendment retaliation claim, [Walters] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quotation marks and citations omitted). Walters alleges that he engaged in protected activity by filing this lawsuit and by previously complaining about the lack of medical care through internal prison procedures. However, he does not allege that he has suffered a deprivation that would likely deter First Amendment activity. This is because not every instance of retaliatory conduct results in a constitutional violation. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009). "A tort to be actionable requires injury. It would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise . . . ." *Id.* (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

Here, Walters says he was threatened with such deprivations during one particular meeting—the threat of implied violence in the context of having a "bad day" by Nurse Kuipers, the threat of the loss of privileges by Defendant Livers, and the threat of legal confrontation between attorneys by Deputy Warden Gann. However, the Seventh Circuit has determined that the mere threat of violence by prison officials does not always amount to retaliation. In *Antoine v. Uchtman*, 275 Fed. Appx. 539, 541 (7th Cir. 2008), guards made racist and threatening statements towards the plaintiff who

9

claimed they had done so in retaliation for his prior complaints. In analyzing whether those statements constituted unconstitutional retaliation, the Seventh Circuit noted:

> Antoine does not contend that the guards took any concrete action that dissuaded him from continuing to file grievances; indeed, his complaint and brief reveal that every time a guard made a statement that he deemed racist or threatening, he filed a fresh grievance against that guard. He has not been silenced, and the Constitution does not compel guards to address prisoners in a civil tone using polite language. Prisons may think it well to control guards' manner of speech, but that is for statutes and regulations (or perhaps the common law) rather than constitutional right.

*Id.*; *see also Nibbe v. Livingston*, No. 15-CV-933-SMY-RJD, 2018 WL 722555, at *3 (S.D. Ill. Feb. 6, 2018) (finding, in part, that guard's threat "did not rise to the level of deprivation that would likely deter First Amendment activity in the future" because the plaintiff's activity in filing additional grievances was not actually deterred). Walters does not allege that he was subjected to violence or that any privileges were actually revoked subsequent to the meeting at Urgent Care. Moreover, it is clear that Walters has continued to file grievances and lawsuits against medical staff and prison officials as is evidenced by his claims in this lawsuit and others.[7] A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S.

---

[7] *See Walters v. Wexford of Indiana*, 3:20-CV-354-JD-MGG and *Walters v. Dr. Liaw*, 3:20-CV-316-JD-MGG, both of which were filed <u>after</u> the March 12, 2020, meeting.

662, 679 (2009) (quotation marks and brackets omitted). As presented, Walters has not stated a plausible claim for First Amendment retaliation on these grounds.[8]

Finally, in his amended complaint, Walters states that he is requesting injunctive relief for constitutionally adequate medical care and for the defendants to "follow MD Pablo Perez's orders." ECF 23 at 10. He also filed a separate motion for preliminary injunctive relief. ECF 4. Construing the complaint liberally to include the relief requested in the motion, Walters asks that: (1) Wexford be ordered to send him to a specialist to treat his lupus; (2) that the defendants be enjoined from transferring him to a different facility; and (3) that a preliminary injunction be issued to ensure he receives treatment for his lupus and is given back his cane, knee supports, shower chair, and medications.

It is the warden who is "a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). As to the medical requests, Walters may proceed against Warden Galipeau in his official capacity to obtain an injunction for

---

[8] It is also unclear that any such claim could possibly be exhausted, as Walters signed the original complaint initiating this lawsuit on March 6, 2020, but these allegedly retaliatory acts did not take place until March 12, 2020. "No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015). Nevertheless, "a plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a judgment, he's out of luck." *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). While Walters claims that Harvil interfered with the grievance process in general, with regard to these specific allegations (which occurred after the suit was initiated) it is not plausible that Walters attempted to grieve them. *See id.* at 536 ("No one can *know* whether administrative requests will be futile; the only way to find out is to try.") (emphasis in original).

constitutionally adequate medical care and supplies related to his lupus. That said, the specific injunctive relief Walters requests—including receiving care from an outside specialist and mandating that the orders of a previous prison doctor are followed—may not be ordered even if it is ultimately determined that his current medical care is inadequate. While it is true that the Warden has both the authority and the responsibility to ensure Walters receives the medical care to which he is entitled under the Eighth Amendment, *Gonzalez*, 663 F.3d at 315, there may be various ways to do so that do not involve sending Walters to a specialist. Simply put, Walters cannot dictate how such medical care is provided. *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (The Prison Litigation Reform Act mandates that "remedial injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted)); *see also Forbes v. Edgar,* 112 F.3d 262, 267 (7th Cir. 1997) (Inmates are "not entitled to demand specific care [nor] entitled to the best care possible."). Therefore, injunctive relief—if granted—would be limited to requiring correctional officials to provide medical treatment and supplies for Walters's lupus to the extent required by the Constitution.

As to his request that the Warden be enjoined from transferring him to a different facility, Walters has provided no basis for proceeding on a claim for such relief. Therefore, the claim for injunctive relief to "stop defendants from transferring me" will be dismissed.

With regard to the motion for preliminary injunctive relief, a "preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original).

> To obtain a preliminary injunction, a plaintiff must first show that: (1) without such relief, it will suffer irreparable harm before final resolution of its claims; (2) traditional legal remedies would be inadequate; and (3) it has some likelihood of success on the merits. If a plaintiff makes such a showing, the court next must weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one. This assessment is made on a sliding scale: The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor. Finally, the court must ask whether the preliminary injunction is in the public interest, which entails taking into account any effects on non-parties. Ultimately, the moving party bears the burden of showing that a preliminary injunction is warranted.

*Courthouse News Serv. v. Brown*, 908 F.3d 1063, 1068 (7th Cir. 2018) (citations and quotation marks omitted). Here, Walters has alleged that he is not receiving any medical care for his lupus, including medically prescribed devices, which is causing him pain, suffering, and rashes. The court will defer ruling on the motion until the Warden has filed a response and Walters has had an opportunity to reply.

For these reasons, the court:

(1) LIFTS the previously ordered stay (ECF 16);

(2) GRANTS Lance Walters leave to proceed against RN Rogers, Dorothy Livers, and Michelle Rebac in their individual capacities for monetary damages for failing to provide him with constitutionally adequate medical care, including medically necessary

devices, related to his is previously diagnosed lupus condition beginning in February of 2020, in violation of the Eighth Amendment;

(3) GRANTS Lance Walters leave to proceed against RN Cody in her individual capacity for monetary damages for failing to provide him with constitutionally adequate medical care, including medically necessary devices, related to his is previously diagnosed lupus condition on March 2, 2020, in violation of the Eighth Amendment;

(4) GRANTS Lance Walters leave to proceed against John Hicks in his individual capacity for monetary damages for being deliberately indifferent to his serious medical needs related to his previously diagnosed lupus condition, after he was advised, in writing, that Lance Walters was not receiving constitutionally adequate medical care, including medically necessary devices, in violation of the Eighth Amendment;

(5) GRANTS Lance Walters leave to proceed against Wexford of Indiana, LLC, for money damages for maintaining a custom or practice of ignoring the medical needs of inmates with chromic health conditions, which resulted in a violation of his Eighth Amendment rights;

(6) GRANTS Lance Walters leave to proceed against Warden John Galipeau in his official capacity for injunctive relief to ensure he is provided with constitutionally adequate medical care, including medically necessary devices, for his previously diagnosed lupus condition as required by the Eighth Amendment;

(7) DISMISSES, John Harvil, Joshua Kuiper, and Kenneth Gann;

(8) DISMISSES all other claims;

(9) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Wexford of Indiana, LLC, RN Rogers, RN Cody, Dorothy Livers, and Michelle Rebac at Wexford of Indiana, LLC, with a copy of this order and the amended complaint (ECF 23), pursuant to 28 U.S.C. § 1915(d);

(10) ORDERS the Indiana Department of Correction and Wexford of Indiana, LLC, to provide the United States Marshal Service with the full name, date of birth, social security number, last employment date, work location, and last known home address of any defendant who does not waive service if they have such information;

(11) DIRECTS the clerk to request Waiver of Service from (and, if necessary, the United States Marshals Service to serve process on) Warden John Galipeau and John Hicks at the Indiana Department of Correction with a copy of this order, the amended complaint (ECF 23), and the motion for preliminary injunction (ECF 4), pursuant to 28 U.S.C. § 1915(d);

(12) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Wexford of Indiana, LLC, RN Rogers, RN Cody, Dorothy Livers, Michelle Rebac, John Hicks, and Warden John Galipeau to respond to the amended complaint, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Lance Walters has been granted leave to proceed in this screening order; and

(13) ORDERS Warden John Galipeau to file and serve by **May 18, 2020**, a response to the motion for preliminary injunction (ECF 4) with a sworn statement (and supporting medical documentation as necessary) explaining how Lance Walters is

receiving constitutionally adequate medical care, including medically necessary devices, for his previously diagnosed lupus condition.

SO ORDERED on May 6, 2020

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT